**UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MITSUI RAIL CAPITAL, LLC,

    Plaintiff,

v.

DETROIT CONNECTING RAILROAD
COMPANY,

    Defendant.

and

LIBERTY SURPLUS INSURANCE
COMPANY,

    Plaintiff,

v.

DETROIT CONNECTING RAILROAD
COMPANY,

    Defendant/Cross-Plaintiff.

_____ /

CASE NO. 2:13-cv-13502

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**I.   INTRODUCTION**

This matter is before the Court on Plaintiff Mitsui Rail Capital's ("Mitsui's") Motion for Partial Judgment on the Pleadings Pursuant to FED. R. CIV. P. 12(c). (Doc. 65.) Based on Defendant Detroit Connecting Railroad Company's ("DCON's") breach of a lease agreement, Plaintiff seeks a judgment of entitlement to attorney fees for defending an action initiated by Defendant in state court, as well as attorney fees incurred in the

present action. (Doc. 1.) Defendant argues that it did not breach the lease agreement and that even if it had breached, the provisions entitling Plaintiff to attorney fees are inapplicable. (Doc. 75.) For the following reasons, the Court **DENIES** Plaintiff's motion.

## II. STATEMENT OF FACTS

DCON entered into a lease agreement with Mitsui on November 1, 2002, to lease twenty gondola railcars. (Doc. 65, Ex. A.) On October 1, 2007, DCON entered into a sublease agreement with Ferrous Processing and Trading Company ("Ferrous"), whereby DCON subleased the Mitsui gondola railcars to Ferrous. (Doc. 75, Ex. B.) On January 3, 2012, Mitsui provided DCON thirty days' notice of termination of the lease agreement. (Doc. 75, Ex. C.)

On February 2, 2012, representatives from DCON and Mitsui performed an initial inspection of the railcars. (Doc. 75, Ex. E.) DCON asserts that the railcars passed the initial inspection. (Doc. 75, Ex. D.) However, in a letter dated August 1, 2012, Mitsui noted numerous repair items that allegedly had been identified and communicated to DCON during the initial inspection. (Doc. 75, Ex. E.) Mitsui subsequently sent the railcars for a final inspection, which resulted in repair estimates totaling $267,807.37. (See Doc. 75, Ex. E.) Mitsui later repaired the railcars at its own expense. (Doc. 75, Ex. F.)

DCON filed suit in Wayne County Circuit Court on August 15, 2012, against Mitsui and Ferrous, seeking a declaratory judgment that DCON was not liable under the lease agreement for the damage to the railcars and alleging breach of contract by Mitsui. (Doc. 75, Ex. L.) Mitsui filed a motion for summary disposition, and the state court dismissed the claim for declaratory relief. The state court subsequently granted

DCON's motion for voluntary dismissal of the breach of contract claim without prejudice. (Doc. 75, Ex. H.)

On August 15, 2013, Mitsui filed suit in this Court alleging that DCON was liable for attorney's fees for the state court action in the amount of $155,857.95, plus additional costs arising from the present action. (Doc. 1, p. 4.) According to Mitsui, §§ 13 and 15 of the lease agreement authorize recovery of costs and attorney fees, which DCON has not paid. (Doc. 1 at ¶¶ 10-12.) Mitsui's insurer, Liberty Surplus ("Liberty"), paid Mitsui in full for the damages to the railcars and became subrogated to Mitsui's rights under the Lease. Liberty, as subrogee of its insured, also filed a complaint against DCON alleging breach of contract and negligence, which has been consolidated with the present case.

### III. STANDARD OF REVIEW

The legal standards for determining motions to dismiss pursuant to Rule 12(b) and Rule 12(c) are the same. Lindsay v. Yates, 498 F.3d 434, 437 n.4 (6th Cir. 2007). When a plaintiff moves for judgment on the pleadings, the motion should be granted if, "on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." See U.S. v. Blumenthal, 315 F.2d 351, 352 (3d Cir. 1963); Hous. Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth., 378 F.3d 596, 600 (7th Cir. 2004). In other words, if a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted. See Nat'l Metro. Bank v. U.S., 323 U.S. 454, 456-57 (1945).

When a court is presented with a Rule 12(b)(6) or 12(c) motion, "it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). If other "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

IV. DISCUSSION

A. Waiver/Abandonment of Claims

There is a discrepancy between the contract provisions relied upon in Plaintiff's complaint and the present motion. The complaint focuses exclusively on § 13(a) of the lease agreement, on a theory of indemnification. (Doc. 1, ¶¶ 10-12.) Section 13(a) serves to release Plaintiff from liability for losses and damages arising from the use of the railcars. (Doc. 65, Ex. A, p. 7.) It also provides that the lessee shall indemnify and defend Plaintiff from all fines, costs, and expenses, including attorney fees, incurred in the event of alleged liability. (Id.) In contrast, the motion focuses only on § 15 of the lease agreement, on a theory of default. (Doc. 65, pp. 7-9.) Section 15 provides that if a lessee breaches the agreement or files any petition seeking modification of the agreement, Plaintiff would be entitled to recover associated expenses and reasonable attorney fees. (Doc. 65, Ex. A, pp. 8-9.)

Defendant maintains that this discrepancy results in (1) abandonment of the theory of liability advanced in the complaint and (2) foreclosure of the theory of liability

discussed in the motion because it was not advanced in the complaint. Plaintiff responds in the reply brief that it is not abandoning its theory of liability under § 13(a) and advances argument in support of this theory. Plaintiff has not sought leave to amend its complaint in order to include the § 15 default theory of liability in addition to the §13(a) indemnification theory.

In support of its argument, Defendant relies on a Sixth Circuit opinion holding that a district court correctly ignored a claim alleged for the first time in a response brief that was not present in the complaint. See Guzman v. U.S. Dept. of Homeland Sec., 679 F.3d 425, 429 (6th Cir. 2012). Likewise, Defendant also relies on an Eleventh Circuit decision finding that arguments not raised as grounds for summary judgment in district court may not be raised thereafter on appeal, even if contained in the complaint. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). However, Resolution Trust was premised on the court's concerns regarding insufficient notice and the opposing party's lack of opportunity to make arguments in rebuttal. Id. Similarly, a Sixth Circuit decision declined to bind the Commissioner of Internal Revenue to its initial administrative pleadings where the taxpayer had been put on notice of the Commissioner's new positions and theories. Garavaglia v. Comm'r of Internal Revenue, 521 Fed. App'x. 476, 482-83 (6th Cir. 2013).

Defendant's response brief thoroughly addresses the merits of both theories of contractual liability. Therefore, Defendant was clearly on notice of both of these potential theories and has availed itself of the opportunity to present its arguments in opposition. Further, while Plaintiff's complaint and motion have focused on different provisions of the lease agreement with respect to the exact theory of liability, the

5

underlying cause of action remains unchanged.  Additionally, as the Court denies Plaintiff's motion on the merits, Defendant's position has not been prejudiced.

## B. Indemnification Provision

When interpreting contracts, including indemnity provisions, Courts must discern and honor the intent of the parties.  Miller-Davis Co. v. Ahrens Constr., Inc., 494 Mich. 161, 174 (Mich. 2014); Rasheed v. Chrysler Corp., 445 Mich. 109, 127 n. 28 (Mich. 1994).  The court must consider the contract as a whole in order to determine the parties' intent.  Pac. Employers Ins. Co. v. Mich. Mut. Ins. Co., 452 Mich. 218, 224 (Mich. 1996).  Where a contract is unambiguous, the terms must be interpreted as written, according to their plain meaning.  Wright v. DaimlerChrysler Corp., 220 F. Supp.2d 832, 843 (E.D. Mich. 2002).  However, where the language is ambiguous, relevant extrinsic evidence of the parties' intent may be considered.  Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 471 (Mich. 2003).  Additionally, Michigan courts have recognized and enforced contractual rights to reasonable attorney fees.  See, e.g., Fleet Bus. Credit, LLC v. Krapohl Ford Lincoln Mercury Co., 274 Mich. App. 584, 589 (Mich. Ct. App. 2007).

In the present case, § 13(a) of the lease agreement provides,

> Only while the Cars are on Lessee's Lines, Lessee shall indemnify, defend, and hold harmless Lessor . . . and does hereby release Lessor from, any and all losses, damages, liabilities, obligations, penalties, fines, suits, costs and expenses, including attorney's fees (collectively "Claims"), in any way arising out of or resulting from the use, loss of use, possession . . . repair, replacement, removal, return or other disposition of Cars . . . .

(Doc. 65, Ex. A.)  Defendant argues that because § 13(a) applies "[o]nly while the Cars are on Lessee's Lines," a necessary condition precedent is absent, as the railcars were not on its lines when the alleged damage occurred.  Plaintiff has not challenged the

6

assertion that the railcars were not on Defendant's lines. Rather, Plaintiff maintains that Defendant's sublease violated the terms of the agreement, making the condition precedent impossible and therefore excluding the condition precedent from consideration. See Mehling v. Evening News Assoc., 374 Mich. 349, 352 (Mich. 1965).

"A condition precedent is a fact or event that the parties intend must take place before there is a right to performance." Mikonczyk v. Detroit Newspaper, Inc., 238 Mich. App. 347, 350 (Mich. Ct. App. 1999). If the condition is not satisfied, there is no cause of action for failure to perform; however, there is an implied agreement that a promisor will not place an obstacle in the way of the condition coming to pass. Harbor Park Mkt., Inc. v. Gronda, 277 Mich. App. 126, 131 (Mich. Ct. App. 2007). Where a party prevents the occurrence of the condition precedent, he waives the performance of the condition, id. at 132 (citing Mehling, 374 Mich. at 352), only if he is under an affirmative duty to cause the condition to occur, Warner v. DSM Pharma Chems. N. Am., Inc., 452 F. App'x 677, 680 (6th Cir. 2011). In Harbor Park, plaintiffs and defendants entered into a purchase agreement subject to a condition precedent requiring the defendants' attorney's approval of the sale. 277 Mich. App. at 128-29. The attorney did not approve the agreement, recommending instead that the defendants sell to a different potential purchaser. Id. at 129. The court rejected plaintiffs' argument that defendants had obstructed the performance of the condition precedent because nothing in the contract required defendants' attorney to approve the offer. Id. at 132-33.

Here, the terms of the lease agreement contain a condition precedent, limiting § 13(a) to apply "[o]nly while the Cars are on Lessee's Lines." Plaintiff has not established that this condition precedent was met when the damage to the railcars

occurred. Plaintiff's contention that a condition precedent is to be disregarded when rendered impossible by a promisor is ultimately unavailing. As in Harbor Park, Plaintiff has not adequately shown that Defendant was under a contractual obligation to fulfill the condition precedent of keeping the railcars on its own lines. As discussed *infra*, under the standards of a Rule 12(c) motion, Plaintiff has not adequately demonstrated that Defendant was contractually prevented from entering into a sublease of the railcars. Consequently, assuming the facts as presented by Defendant to be true, Plaintiff has not met its burden of showing that the condition precedent was fulfilled. Therefore, the Court cannot grant its motion on these grounds.

**C. Default Provision**

Section 15(b) of the lease agreement provides that "[u]pon occurrence of any Event of Default . . . Lessor, in any case, [is] entitled to recover all costs, expenses, and reasonable attorneys' fees incurred by Lessor in enforcing its rights and remedies hereunder . . . ." (Doc. 65, Ex. A, p. 9.) The contract defines Event of Default in § 15(a) as including one of the following:

> (2) The breach by Lessee of any other term, or condition of this Agreement, which is not cured within thirty (30) days after receipt of written notice of such breach; [or]
> . . . .
> (4) The filing by or against Lessee of any petition or the initiation by or against Lessee of any proceeding: (a) for any relief which includes, or might result in, any modification of the obligations of Lessee hereunder . . . .

(Id. at p. 8-9.) Plaintiff argues that Defendant's filing of the claim in state court qualifies as an Event of Default. Additionally, Plaintiff claims that Defendant has breached the contract by failing to return the railcars in good operating condition, in violation of § 8(b) of the agreement, and by subleasing the railcars without written permission from

8

Plaintiff, in violation of § 18(a) of the agreement. Therefore, it claims it is entitled to recovery of attorney fees according to this provision.

By its unambiguous terms, upon the occurrence of an Event of Default, § 15(b) allows for the recovery of attorney fees "incurred by Lessor in enforcing its rights and remedies hereunder . . . ." The parties' clear intent in drafting this provision was to provide Plaintiff with a remedy for costs and attorney fees incurred under certain circumstances amounting to an Event of Default. Therefore, the Court must determine whether the initiation of the state court action, the sublease agreement, and the damage to the railcars classify as Events of Default pursuant to §§ 15(a)(2) and 15(a)(4) of the lease agreement.

### a. State Court Action as an Event of Default

Section 15(a)(4) provides that an Event of Default triggering Plaintiff's right to attorney fees occurs with "[t]he filing by or against Lessee of any petition or the initiation by or against Lessee of any proceeding: (a) for any relief which includes, or might result in, any modification of the obligations of Lessee hereunder." Defendant initiated the state court action against Plaintiff, primarily seeking a declaratory judgment that Defendant was not liable for the alleged damage to the railcars. (See Doc. 75, Ex. L, pp. 3-4.) Additionally, Defendant stated a claim for breach of contract, based on Plaintiff's attempts to tax the costs allegedly owed by Defendant. (Id.)

The terms of § 15(a)(4) broadly encompass proceedings for any type of relief, which includes declaratory judgment. However, the provision also limits its application to relief that might result in modification of a Lessee's contractual obligations. Defendant contends that the state court action sought judicial interpretation and

9

enforcement of the contract terms as written, and not modification thereof. Plaintiff responds that by seeking declaratory judgment that it did not owe damages, Defendant was attempting to abrogate its obligation to pay, effectively seeking modification of the agreement. In support of its state court claims, Defendant submitted only the lease and sublease agreements and correspondence between the parties regarding Plaintiff's demands for repair costs. (See Dkt. 75, Ex. L.) Defendant did not allege any oral or express modification of the contract terms in the complaint. Moreover, neither party has asserted that the lease agreement is ambiguous in any way – therefore, a court interpreting the agreement would have no cause to modify it. See Lentz v. Lentz, 271 Mich. App. 465, 478 (Mich. Ct. App. 2006) ("we will not rewrite or abrogate an unambiguous agreement negotiated and signed by consenting adults . . . ."). Assuming the facts alleged by Defendant to be true, Plaintiff has not met its burden of establishing that the state court action properly classifies as an Event of Default. Accordingly, the Court cannot grant Plaintiff's motion on these grounds.

### b. Sublease Agreement as an Event of Default

When interpreting leases, the Michigan Supreme Court has recognized that a clause prohibiting a transfer of an interest by assignment does not prohibit subleasing. Copland v. Parker, 4 Mich. 660, 660 (Mich. 1857). Indeed, restrictions on subleasing are generally not favored by the law and are strictly construed against those attempting to enforce them. Miller v. Pond, 214 Mich. 186, 190 (Mich. 1921). Further, the Michigan Court of Appeals has recognized that a lease gives a tenant possession of the property leased and exclusive use or occupation of it, for all purposes not prohibited by

the terms of the lease. De Bruyn Produce Co. v. Romero, 202 Mich. App. 92, 98 (Mich. Ct. App. 1993).

> The lease agreement at issue here states, at § 18(a),
>
> Lessee shall not transfer or assign the Cars or its interest and obligations hereunder, nor shall a transfer or assignment by operation of law or otherwise of Lessee's interest in the Cars or this Agreement be effective against Lessor, without Lessor's prior written consent. No transfer or assignment of this Agreement, or of the Cars, shall relieve Lessee from any of its obligations to Lessor hereunder.

(Doc. 65, Ex. A.) The language of § 18(a) clearly prohibits "transfers" or "assignments" of the railcars without prior written consent by Plaintiff. However, according to Copland, such a provision does not encompass a sublease within its restrictions. See 4 Mich. at 661. Similar to the present agreement, the five-year lease between the plaintiff and the defendant in Copland prevented transfer of the lease without the consent of the original lessor. Id. Because the defendant had subleased less than his entire interest in the property to the sublessee, the relationship between the original lessor and lessee remained unaltered, and no "transfer" occurred. Id. The same theory holds true in the present case, as both parties agree that the agreement between Defendant and Ferrous was a sublease and not an assignment.

Additionally, § 15(b)(2) of the lease agreement provides that an Event of Default takes place upon a breach by Defendant "which is not cured within thirty (30) days after receipt of written notice of such breach." (Doc. 65, Ex. A § 15(a)(2).) Defendant contends that it never received any such notice regarding the sublease. Plaintiff has not shown that it provided Defendant with notice of this alleged breach, a necessary condition to establishing an Event of Default. Therefore, assuming Defendant's

11

allegations to be true, Plaintiff has not met its burden in showing that it is entitled to recovery under this provision as a matter of law.

### c. Damage to Railcars as an Event of Default

Section 12 of the agreement specifies that, "[a]t the end of the designated Term, Lessee, at its expense, shall deliver each Car to Lessor at the point designated in the applicable Exhibit A, and in the condition required by Article 8 {Maintenance and Repair} of this Agreement." According to Article 8, the railcars were to be maintained in "good operating condition as specified in AAR Interchange and FRA Rules." Any inspections, repairs, and maintenance would be performed at Lessee's expense according to liability as assigned by Handling Line Responsibility under Rule 95 of the AAR Interchange Rules. (See Doc. 65, Ex. A, §8(a).)

While Plaintiff asserts that the railcars were not returned in good operating condition, Defendant maintains that they were. The Court cannot determine as a matter of law whether a breach of contract occurred with respect to the condition in which Defendant returned the railcars to Plaintiff. Assuming Defendant's allegations that the railcars were returned in good operating condition to be true, no breach occurred. Consequently, Plaintiff has not met its burden of showing that it is entitled to attorney fees as a matter of law under this provision.

## V.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's Motion for Partial Judgment on the Pleadings be **DENIED**.

**IT IS SO ORDERED.**

Date: July 16, 2014                                     s/Marianne O. Battani
                                                        MARIANNE O. BATTANI
                                                        United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 16, 2014.

                                                        s/ Kay Doaks
                                                        Case Manager