UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITSUI RAIL CAPITAL, LLC,

    Plaintiff,

-vs-

DETROIT CONNECTING RAILROAD
COMPANY, a Michigan corporation;

    Defendant.

**Consolidated**
**Case No. 13-13502**
Hon. Marianne O. Battani
Magistrate Judge Hluchaniuk

---

LIBERTY SURPLUS INSURANCE
COMPANY, a New Hampshire Corporation,

    Plaintiff,

-vs-

DETROIT CONNECTING RAILROAD
COMPANY, a Michigan corporation,

    Defendant

---

| | |
|---|---|
| DANIEL J. SEYMOUR (P38908) | C. ROBERT DOBRONSKI III (P72684) |
| DAVID R. BAXTER (P31121) | Attorney for Defendant DCON |
| Attorneys for Plaintiff | 38235 Executive Drive |
| 155 W. Congress, Suite 603 | Westland, MI 48185 |
| Detroit, MI 48226 | (734) 641-2300 |
| (313) 964-2040 | CRDobronski@abrailroad.com |
| dseymour@nbslawyer.com | |
| dbaxter@nbslawyer.com | |

1

| | |
|---|---|
| FRED C. BEGY III | CHARLES E. KOVSKY (P25493) |
| MARK A. STANG | Co-Counsel for Defendant DCON |
| Of Counsel for Plaintiff | 31077 Schoolcraft Road |
| 30 S. Wacker Dr., Ste. 2600 | Livonia, MI 48150 |
| Chicago, IL 60606 | (734) 522-2120, ext. 1126 |
| (312) 855-5442 | ckovsky@engenius.com |
| fbegy@chuhak.com | |
| mstang@chuhak.com | |

**DEFENDANT, DETROIT CONNECTING RAILROAD'S, REPLY TO MOTION FOR SUMMARY JUDGMENT (DOC. 83).**

**I. DCON'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED SINCE THE APPLICABLE AAR INTERCHANGE RULES ARE CLEAR THAT NO LIABILITY HAS ACCRUED AGAINST DCON AS THERE IS NO EVIDENCE DCON DAMAGED THE CARS, AND INTERCHANGE IS A LEGAL LIMIT ON LIABILITY.**

The arguments proffered by MRC have been previously addressed by DCON in Documents 75, 83, 84, 95, and 96. The arguments are incorporated by reference. In an effort to clarify any issues, a few matters need to be highlighted: (1) MRC impliedly portrays an interchange inspection as an all-encompassing inspection designed to locate all damage, when in reality, the inspection is solely looking to establish that minimal mechanical requirements are met for safe movement; and there is no requirement that DCON document any type of damage when the Cars were safe for interchange and DCON did not accept liability for damage; and (2) MRC's argument contradicts the language of the AAR

2

Interchange Rules; and the outbound interchange from DCON's trackage eliminated all damage liability for DCON.

A. <u>MRC's arguments ignore how and why interchange inspections are performed, and its argument that a lack of documentation creates liability is contradicted by the AAR Interchange Rules and undisputed facts.</u>

The AAR Interchange Inspections are not all-encompassing inspections. To the contrary, the inspections seek to establish only that the Cars meet minimal mechanical standards and are safe for movement. In contravention of the AAR Interchange Rules, MRC argues that passing an inspection without documentation somehow—*without discussing a single rule that has such a requirement*—means the line accepting a car in interchange becomes responsible for pre-existing damage[1].

Contrary to MRC's argument, AAR Interchange Rule 89(C)(2)(A) presupposes that there is acceptable damage and that a railroad may accept a car in interchange—with damage—if the car is safe for movement. The basis for such a standard is self-evident as railcars are continuously moved through industrial environments where damage may easily arise. The complete inspection of every

---

[1] MRC makes this argument without establishing why this same rule would not apply to the interchange acceptances that occurred after the Cars left DCON. Instead, MRC appears to want to freeze time to a selected moment while ignoring the cyclical nature of rail movement and any fact that contradicts MRC's position.


car at interchange for all potential damage is impracticable[2] and impossible for latent defects. Instead of perfect condition, a car only needs a limited number of items to be acceptable for interchange. AAR Interchange Rule 88, identifies the parts that are looked at in inspection. The parts inspected at interchange are only moving parts on the equipment. As indicated within the rule, the body of the Car—the central basis to MRC's claims—is not typically inspected at interchange beyond a cursory review. *See* AAR Interchange Rule 88. MRC is aware of this, since it cites *Greyhound Financial Services v. Grand Trunk Western Railway Company*, 796 F.Supp. 1019, 1021 (E.D. Mich. 1992) which found:

> AAR Rules 88 and 89 govern the interchange of freight traffic by insuring that a car which is offered or accepted in <u>interchange meets certain minimum standards</u> to assure that it has no basic structural weakness or <u>damage that would cause an unsafe operating condition</u> on an accepting line. The Rules also assure against unfair rejections, or opportunistic making of unnecessary repairs and billing therefor.

In stark contrast with MRC's arguments, the clear intent of the rules is that cars with damage—*if the Cars are safe for movement*—will be deemed acceptable for interchange. But the safe movement of the cars is not at issue since the Cars

---

[2] For MRC's argument to be deemed valid, the Court would effectively be demanding that every railroad perform an in-depth inspection of every part on each car in a train and document all potential damage regardless of whether the Car was safe for movement or mechanically in compliance with the AAR Interchange Rules or where the damage arose. Just viewing such a requirement through the impact on the railroad industry creates large problematic and unintended questions when placed in context of the prohibitive length of time it would take to inspect and document all potential damage on each car in a 100+ car train.

were repeatedly accepted in interchange by multiple rail carriers before and after leaving DCON. This direct evidence indicates they were safe for movement and that DCON has no liability for damage. *See* AAR Interchange Rule 89(B)(10).

It has become clear that MRC cannot show liability under a plain reading of the AAR Interchange Rule. MRC cannot show DCON's responsibility under AAR Interchange Rule 95 and claimed liability is further limited by the Cars passing multiple inspections after leaving DCON's property. *See* AAR Interchange Rule 89(B)(10). Due to the lack of proofs, MRC's focus has shifted to some unusual interpretations of the AAR Interchange Rule with no basis in the language of the rules or the facts at bar. MRC now argues that DCON did nothing to document the condition of the Cars and that a lack of documentation creates liability:

> Plaintiff MRC highlights that Defendant DCON's Motion for Summary Judgment fails to attach any inspection or damage reports prepared by DCON which substantiates the condition of the railcars when they received the cars back from the national rail system on their final return to DCON's own lines.

Ignoring that DCON invited MRC to inspect the Cars with DCON prior to interchange and documented the condition of the Cars with dozens of photographs, AAR Interchange Rule 89 only discusses two types of documentation. For plain reasons, neither document was required under the rules. The two types of documents discussed in AAR Interchange Rule 89 are (1) defect cards, and (2) bad order cards. *See* AAR Interchange Rule 89(B)(2) and (B)(5). Neither of these

documents is applicable to the Cars at issue as they were safe for interchange, and accepted by multiple carriers—*also without documentation*—before and after leaving DCON.

A defect card only applies when the Cars are rejected in interchange, and the use of a defect card is not mandatory. AAR interchange Rule 89(B)(6) states:

> Form shown below [defect card] or the equivalent, with defects listed, should be completed for empty or loaded cars <u>rejected in interchange under the provisions of this rule</u>.

The second document is a "bad order card" which is only applied if the car does not meet minimal interchange standards for safe movement and is way-billed back to the owner for repair. *See* AAR Interchange Rule 89(B)(5). As the Cars were not rejected in interchange and were safe for movement, meeting the requirements for acceptance under AAR Interchange Rule 88, no documentation was created.

If there was any question about DCON's plain language reading of the rules or its method of inspection, the fact the Cars repeatedly passed interchange inspection without having such a card placed upon them by multiple third-party railroads is uncontroverted evidence that the cars met the standards required for interchange. *See* AAR Interchange Rule 89(B)(10).

Another unusual interpretation of the rules is MRC's claim that DCON was the "ultimate receiving line," however, such a rule is not found within the AAR Interchange Rules, and is contradicted by the fact the Cars left DCONs possession

6

and were received in interchange by multiple carriers after leaving DCON. *See* Doc. 89 at 8. MRC's sole basis for this claim is an interpretation:

> Thus, when the "empties" are returned to DCON's line on final return, DCON is responsible for the condition unless they have notified the delivering carrier of any defective condition. (See F to MRC's Motion for Summary Judgment, Rule 89(B)(10)).

MRC never discusses how it reaches this conclusion from the text since the rule only removes liability and does not create liability:

> Delivering road is **relieved of responsibility for damage to car** after acceptance by the inspector of the receiving road.

AAR Interchange Rule 89(B)(10)(emphasis added).

MRC's analysis also completely ignores the context of the rules. The AAR Interchange Rules are sophisticated industry standards that have been developed over several decades. The Court should presume the drafter of the rules meant what they said and apply the rules as they are written. In contradiction of the plain language of the rules, MRC is attempting to impose what it terms a "hot potato" test (whoever is in last possession of the Cars when damage is found, assumes the liability for that damage). Such an argument is a strange standard given the source of the rules. If the rules indeed provided for a hot potato analysis, it would be self-evident from the language of the rules themselves. But, the rules do not provide the language to be expected for a discovery analysis such as "found," or "discovered", an absolute must for MRC's theory to be right. In direct contrast,

7

the rules are clear that liability is only imposed for unfair usage damage "that occurs after cars are placed on designated interchange track." *See* AAR Interchange Rule 89(B)(10). MRC's position should be rejected as MRC does not accurately and properly apply the AAR Interchange Rules, the only means of imposing liability against DCON.

## Conclusion

For the foregoing reasons, DCON's motion (Doc.83) should be granted.

                                      Respectfully submitted,

                                      By:  /s/C. Robert Dobronski III_____
                                      C. Robert Dobronski III (P72684)
                                      Attorney for Defendant DCON
                                      38235 Executive Drive
                                      Westland, Michigan 48185
Dated: November 3, 2014          Phone: (734) 641-2300

## Certificate of Service

I certify that on November 3, 2014, I electronically filed the foregoing papers with the Clerk of the Court using the CM/ECF system which will serve counsel of record.

                                      By: /s/ C. Robert Dobronski III
                                      Co-Counsel for Defendant