UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITSUI RAIL CAPITAL, LLC,

      Plaintiff,                              **Consolidated**
                                            **Case No. 13-13502**
-vs-                                 Hon. Marianne O. Battani
                                 Magistrate Judge Hluchaniuk

DETROIT CONNECTING RAILROAD
COMPANY, a Michigan corporation;

      Defendant.

---

LIBERTY SURPLUS INSURANCE
COMPANY, a New Hampshire Corporation,

      Plaintiff,

-vs-

DETROIT CONNECTING RAILROAD
COMPANY, a Michigan corporation,

      Defendant

---

| | |
|---|---|
| DANIEL J. SEYMOUR (P38908) | C. ROBERT DOBRONSKI III (P72684) |
| DAVID R. BAXTER (P31121) | Attorney for Defendant DCON |
| Attorneys for Plaintiff | 38235 Executive Drive |
| 155 W. Congress, Suite 603 | Westland, MI 48185 |
| Detroit, MI 48226 | (734) 641-2300 |
| (313) 964-2040 | CRDobronski@abrailroad.com |
| dseymour@nbslawyer.com | |
| dbaxter@nbslawyer.com | |

1

FRED C. BEGY III
MARK A. STANG
Of Counsel for Plaintiff
30 S. Wacker Dr., Ste. 2600
Chicago, IL 60606
(312) 855-5442
fbegy@chuhak.com
mstang@chuhak.com

CHARLES E. KOVSKY (P25493)
Co-Counsel for Defendant DCON
31077 Schoolcraft Road
Livonia, MI 48150
(734) 522-2120, ext. 1126
ckovsky@engenius.com

---

## DEFENDANT, DETROIT CONNECTING RAILROAD'S, REPLY TO MOTION FOR SUMMARY JUDGMENT (DOC. 84).

I.  **Liberty's reliance on the *Greyhound* decision gives Liberty no support due to the obvious differences in the underlying Lease, further, as the decision had no discussion of the liability under AAR Rule 89, 95, and 96, Liberty's reliance on the case for support under these rules is incorrect.**

The arguments proffered by Liberty Surplus Insurance Company ("Liberty") have been previously addressed by DCON in Documents 75, 83, 84, 95, and 96. The arguments are incorporated by reference. In an effort to clarify any issues, a few matters need to be highlighted. For purposes of analysis of liability under the Lease at bar, *Greyhound Financial Corp. v. Grand Trunk Western R. Co.*, 796 F.Supp. 1019 (E.D. Mich 1992), provides no assistance to Liberty due to clear contractual differences, the operative rules not being discussed or applied, and unlike the facts in *Greyhound*, the Cars at bar passing multiple interchange inspections which is conclusive that the Cars were in good operating condition.

In contrast with the general language in other leases which may place the responsibility for damage regardless of fault on a lessee, the Lease at bar places no

2

responsibility on DCON to perform <u>any repair</u> unless the damage occurred while in

DCON's direct possession on its railroad trackage.   In direct contrast with

Liberty's position, it is the Lessor's responsibility—not DCON's—to place and

maintain the Cars in good operating condition.   Liberty acknowledges this

difference while confusing the Lessor with the Lessee:

> As was the case in *[Greyhound Financial Corp. v. Grand Trunk Western R. Co.*, 796 F.Supp. 1019 (E.D. Mich 1992)]*, DCON, like Grand Trunk Railroad, was obligated to return the leased rail cars to [MRC] at the end of the term in good operating condition.  Paragraph 8(a) of the Lease could not be clearer:
>
>> Except as otherwise provided herein, **Lessor** [MRC] shall, **at its expense**, perform or arrange and **pay for the performance of** inspection maintenance and **repairs to the Cars** as shall be necessary to maintain the Cars in good operating condition as specific in AAR Interchange and FRA Rules. . .

Doc. 99 at 7 (emphasis added).  While DCON agrees the Lease cannot be clearer,

DCON should not need to remind Liberty that DCON is the Less<u>ee</u> and not the

Less<u>or</u> and that the Lease clearly places responsibility on the Lessor to perform

repairs absent an exception.

Liberty's problematic and questionable rationale that this provision places

responsibility on DCON is further hindered by its analysis claiming the *Greyhound*

decision is applicable.  This is because the lease in *Greyhound* expressly made the

lessee solely responsible for all damage regardless of cause:

> V. SERVICE: (b) **Lessee will at its <u>sole expense</u>** at all times during the term of this Agreement **maintain** each Unit in good operating

3

order, **repair**, condition and appearance, normal wear and tear excepted. . . .

*Greyhound*, 796 F.Supp. at 1024 (emphasis added).  Thus the issue in *Greyhound* was not one of responsibility, but simply whether the Cars were damaged.

In direct contrast with *Greyhound*, Liberty's subrogor is responsible under the Lease for any and all damage to the Cars except when a specific exception applies.  Lease at ¶8(a).  The Lease at 8(a) that immediately follows the Lessor responsibility section states the only mechanism for finding liability against DCON for damage:

> [P]rovided, however, that such inspections, repairs, and maintenance ("Maintenance") shall be performed at Lessee's expense in the event that such Maintenance (1) was occasioned by an event for which Lessee **has Handling Line Responsibility under Rule 95** of the AAR Interchange Rules, including damage by a shipper[1] on Lessee's Lines, or (2) arises in an instance in which the applicable **interchange rules would assign responsibility to Lessee for the loss, damage, destruction, or liability** requiring such maintenance. . . Lessee may make running repairs, at Lessor's expense.  "Running Repairs" shall be defined as repairs of the type required by interchange rule.

This section specifies two separate bases for liability that Liberty must prove which have the practical effect of being the same proofs, as the sole basis for railroad liability under the AAR Interchange Rules is AAR Interchange Rule 95. The pertinent text of AAR Interchange Rule 95 is easy to understand:

---

[1] DCON has repeatedly addressed how Liberty admits it cannot show where the Cars were damaged, let alone, damaged by a shipper on DCON's lines damaged the Cars.  *See* Doc. 84 at 12.

4

HANDLING LINE—AT ANY TIME
A. This section applies only when [(1)] handling line has [(2)] knowledge of damage or loss to any car or loss to any car or listed appurtenances regardless of extent unless otherwise defined in this Section, resulting from [(3)] unfair usage conditions outlined below. Car must be repaired and returned to service, furnishing owner with billing repair data to cover.

This rule applies only to a railroad actively handling the cars, *i.e.* in (1) possession of the cars on its property (2) who has actual knowledge of (3) specified unfair usage damage[2]. Like a statute, this provision does not operate outside of the context of other provisions of the AAR Interchange Rules. The impact of these provisions is that the rule only applies when they are damaged on the railroad's property:

The receiving road[3] is responsible for damage designated as unfair usage in these rules, that occurs **after cars are placed on designated interchange track** by the delivery carrier.

AAR Interchange Rule 89(B)(8) (emphasis added).

Delivering road is **relieved of responsibility for damage to car** after acceptance by the inspector of the receiving road.

AAR Interchange Rule 89(B)(10)(emphasis added).

---

[2] Unfair usage damage are damages from specific origins, such as derailments, explosions, and building collapses. *See* AAR Interchange Rule 95(A) attached as Exhibit I to Doc. 84 for a comprehensive listing.

[3] Interchange has several different categories. The "delivering road" is the railroad delivering a car to another railroad. The "receiving road" is the railroad receiving that car. Once in the receiving road's possession, the receiving road becomes the "handing line," until the car has been delivered to another entity or railroad.

5

These industry rules were created to eliminate the precise scenario argued by Liberty, *i.e.* that a railroad is responsible for some alleged unfair usage damage that occurred due to actions by an unknown party, at an unknown time, and at an unknown location.  Effectively, to state a claim for damages, Liberty must show the alleged unfair usage damage occurred after acceptance by DCON and with DCON's knowledge.  *See* AAR Interchange Rule 95(A).  Liberty admits it cannot show the necessary facts.  Furthermore, as indicated in AAR Interchange Rule 89, the Cars passed repeated interchange inspections after leaving DCON's possession which conclusively relieves liability under the AAR Interchange Rules—which is a discussion the *Greyhound* Court did not make due to the broader terms of the lease.

To get around the clear language of the rules, Liberty argues—without any support—that MRC was an originating carrier and is relieved of responsibility. Doc. 99 at 11.  But such an argument ignores that there is only one carrier in this action—DCON.  Further, the question under the Lease is not whether Liberty's subrogor would normally be liable for damage, but whether DCON is responsible under the AAR Interchange Rules.  *See* Lease at ¶8(a).

In an effort to clarify any ambiguity in the law created by Liberty's argument, DCON will address the Ninth Circuit Court of Appeals case, *Torres v. Southern Pacific Transportation Company*, 584 F.2d 900 (9th Cir., 1978).  There, the railcar in which Plaintiff was riding derailed due to defective maintenance.  *Id.*

at 901. The issue before the Court was the liability for the condition of the railcar resulting in the derailment. *Id*. at 902. Contrary to Liberty's claim, the holding and rationale of that case are totally consistent with the position advocated by DCON: the delivering road[4] was relieved of responsibility for damages to a car after acceptance by the receiving road; the receiving road was responsible for damages to that car that occurred <u>after</u> the car was accepted (the point in time when the receiving line was then designated as the handling line); and the handling line had <u>knowledge</u> of the damages which fit within the description of unfair damages (from derailment) and which happened on its line.

Despite the clarity of the AAR Interchange Rules, the Plaintiff in *Torres* sued the Atchison, Topeka and Santa Fe Railway Company ("Santa Fe") on the mere basis that it was the owner of the defective railcar. *Id*. at 901. While that fact was relevant for a potential state cause of action of strict liability (ultimately held not applicable by the 9th Circuit), it had no relevancy for establishing liability under the AAR Interchange Rules. *Id*. at 902. As far as the AAR Interchange Rules were concerned, ownership had nothing at all to do with the Court's analysis nor holding. *Id*. at 902.

---

[4] The *Torres* Court uses the term "originating carrier" in a synonymous manner with "delivering line" as the Court cited several cases that dealt with liability for a delivering carrier—not originating carrier—as support for its holding. *See Id*. at 901 citing *Ruiz v. Midland Valley R. R*., 158 Kan. 524, 148 P.2d 734, 737 (1944); and *Hunter v. Missouri-Kan.-Tex. R. R*., 276 F.Supp. 936, 940-41 (N.D.Okl.1967), Aff'd, 433 F.2d 352 (10th Cir. 1970).

The Santa Fe was the originating carrier/delivering line which interchanged with the Southern Pacific. *Id*. at 902. As the delivering line, the Santa Fe was relieved of liability once the car was accepted by the Southern Pacific. *Id*. at 902. The cleansing effect of the rules is precisely what DCON has asserted occurred once the cars were interchanged and left DCON possession. *See* Doc. 84 at 16-17.

Following the plain reading of AAR Interchange Rule 95, the accident in *Torres* occurred <u>after</u> interchange while being <u>handled</u> at the time of the accident by the Southern Pacific and that Southern Pacific <u>knew</u> of the damages because the car derailed while on the Southern Pacific's tracks. *Id.* And, finally, the derailment was classified as <u>unfair usage</u>[5]. *See* AAR Interchange Rules 95(A)(3). This fact pattern is distinct from the one at bar where there is no evidence DCON caused or knew of the damage, and there is uncontroverted evidence that the Cars passed multiple interchange inspections with third-party railroads after leaving DCON's possession.

## Conclusion

For the foregoing reasons, DCON's motion (Doc. 84) should be granted.

---

[5] Even Liberty recognizes that only certain types of damages are unfair usage under Rule 95. They write, "this rule addresses damage resulting from misuse of equipment or overloading of vehicles." Doc. 88 at 11. What Liberty fails to do, however, is also apply Rule 89, which requires that the unfair usage occurs <u>after</u> acceptance; and fails to apply the other conditions of Rule 95 – knowledge that the damages occurred while on the handling line.

Respectfully submitted,

By:  /s/C. Robert Dobronski III_____
C. Robert Dobronski III (P72684)
Attorney for Defendant DCON
38235 Executive Drive
Westland, Michigan 48185
Dated: November 3, 2014          Phone: (734) 641-2300

## Certificate of Service

I certify that on November 3, 2014, I electronically filed the foregoing papers with the Clerk of the Court using the CM/ECF system which will serve counsel of record.

By: /s/ C. Robert Dobronski III
Co-Counsel for Defendant
Detroit Connecting Railroad Company
38235 Executive Drive
Westland, Michigan 48185
CRDobronski@abrailroad.com
(734) 641-2300